JOSÉ M. ALONSO GARCÍA ETC., ET AL., recurrentes, *v.* COMISIÓN INDUSTRIAL DE PUERTO RICO, ETC., demandada.

*Número:* O-74-275        *Resuelto:* 31 de diciembre de 1974

---

*Jorge Márquez Gómez, Miguel A. Guzmán Soto* y *Antonio Allende Calderón,* abogados de los recurrentes.

EL JUEZ ASOCIADO SEÑOR DÍAZ CRUZ emitió la opinión del Tribunal.

La compensación por accidente del trabajo es un remedio dirigido a aliviar la reducida capacidad productiva del obrero que sobrevive al accidente, o atender a la necesidad económica de sus dependientes cuando desaparece su proveedor. Los dineros provenientes de dicha compensación no son, por tanto, un bien patrimonial transmisible por reglas de herencia a herederos no dependientes. *Tomás* v. *Comisión Industrial,* 59 D.P.R. 860 (1942); *Cepeda* v. *Comisión Industrial,* 76 D.P.R. 801 (1954); *Gallart Mendía* v. *González Marrero,* 95 D.P.R. 201 (1967). Por el propósito eminentemente social y remedial de la Ley (11 L.P.R.A. secs. 1 y ss.) en caso de no haber dependientes, los herederos no han de beneficiarse ni aun de los pagos por concepto de compensación y dietas ya vencidos y exigibles a la fecha en que muere el trabajador lesionado. El derecho a dietas y compensación para subsistir es de la naturaleza esencial de una pensión alimenticia, uno de los derechos personalísimos que se extingue con el individuo.[1] Dichos beneficios van dirigidos a suplir, con fondos públicos, deficiencias en el presupuesto familiar del trabajador o de aquellos que de él dependían y no a enriquecer el acervo privado de quienes nada necesitaban del obrero extinto. Si al morir el trabajador había dietas o plazos de compensación vencidos e impagados, ello reflejaría una injusticia social que no se corrige con entregarle esas cantidades deven-

---

[1] Arts. 149 y 150 del Código Civil (31 L.P.R.A. secs. 568, 569); Castán, *Derecho Civil,* To. 5, Vol. 2, pág. 258, Octava ed. (1966); Bonet Ramón, *Compendio de Derecho Civil,* To. 4, pág. 706, ed. 1960; Manresa, *Comentarios al Código Civil Español,* To. 1, pág. 846, ed. Séptima, año 1956; Scaevola, *Código Civil,* To. 3, pág. 471, 5a. ed.

gadas como una regalía o bono a quien no las necesita, sino que se agravaría sacando ese dinero de los recursos generales de que tanta necesidad tiene el Fondo del Seguro del Estado para cumplir su encomienda de ir en auxilio de los obreros que sufran lesiones o se inutilicen por accidentes que provengan de cualquier acto o función inherente a su trabajo o empleo y que ocurra en el curso de éste y como consecuencia del mismo o por enfermedad derivada de la ocupación. 11 L.P.R.A. sec. 2.

Hay una obvia razón de interés y moral pública en que los dineros que no fueron desembolsados a tiempo para los fines legítimos de sufragar gastos de subsistencia del trabajador, desaparecido éste, permanezcan en el fondo gubernamental para aliviar la penuria de otras víctimas de accidente del trabajo.

Doña Juana López Ramos, una maestra de instrucción pública, de 57 años, sufrió un colapso en su trabajo. Su padecimiento de arteriosclerosis e insuficiencia coronaria se había agravado por su trabajo, y aun su subsiguiente muerte por acto propio impulsado por una reacción depresiva neurótica fue también vinculada a su empleo. Le sucedieron tres hijos mayores de edad, y su esposo, ninguno de los cuales pudo establecer su dependencia económica de la extinta. Cuando murió Doña Juana el Fondo del Seguro del Estado no había resuelto todavía el caso de incapacidad (eventualmente fijada en un 50%) que precedió al de muerte. Concluyó la Comisión Industrial que el no haber cobrado la maestra la compensación correspondiente al 50% de sus funciones fisiológicas generales se debió a "demora inexcusable" del Fondo y que dicha compensación así como las dietas impagadas en defecto de dependientes son parte de su patrimonio hereditario.

Hemos de abordar la cuestión planteada de si son transmisibles a los herederos aquellos beneficios o plazos de pensión devengados y exigibles, pero impagados al sobrevenir

el deceso de la maestra. Bajo la vigencia de la antigua Ley por Accidentes del Trabajo (Núm. 85 de 14 de mayo de 1928) cuando este Tribunal hubo de escoger entre criterios disímiles sobre transmisibilidad hereditaria, en *Quiñones* v. *South P.R. Sugar Co. of P.R.*, 48 D.P.R. 351 (1935), resolvimos que pertenecía a los herederos aquella parte de la compensación devengada (*accrued*) a la muerte del obrero. Todavía sustentan ese criterio los comentaristas: Schneider, *Workmen's Compensation*, To. 11, sec. 2331, pág. 607, ed. tercera; y Larson, *Workmen's Compensation Law*, To. 2, sec. 58.40, pág. 10-244. La respetable opinión de estas autoridades se emite dentro de la esfera de derecho común anglosajón que en materia de herencia no sigue nuestra tradición civilista, y frente a situaciones socio-económicas de los Estados Unidos que distan mucho de coincidir con las que prevalecen en nuestra patria.

■ En cabal observancia de esta legislación reparadora, proviniendo del mismo origen tanto los plazos devengados como los no devengados a la muerte del obrero, compartiendo unos y otros la característica esencial de ser una aportación del Estado para preservar la vida de quien se inutilizó en su trabajo, estos pagos han de considerarse como derechos personalísimos que se extinguen con la muerte.

La decisión en *Quiñones* v. *South P.R. Sugar Co. of P.R.*, supra, por desvirtuar la naturaleza y propósito de la compensación por accidente del trabajo, y en cuanto es contraria a los razonamientos expuestos en esta opinión debe entenderse revocada. También resulta erróneo el criterio del Administrador que siguiendo a *Quiñones* informa estar dispuesto a entregar a los herederos aquellos plazos de pensión y dietas devengados por incapacidad de la maestra, durante el periodo comprendido entre el colapso cardiaco y su muerte.

*La decisión de la Comisión Industrial será revocada.*

El Juez Asociado, Señor Cadilla Ginorio, disintió con opinión en la cual concurren el Juez Presidente, Señor Trías Monge, y los Jueces Asociados, Señores Martín e Irizarry

Yunqué. El Juez Asociado, Señor Negrón García, concurre en la opinión del Tribunal con opinión en la cual concurre el Juez Asociado, Señor Dávila.

—O—

Opinión concurrente del Juez Asociado, Señor Negrón García, con la cual concurre el Juez Asociado, Señor Dávila.

San Juan, Puerto Rico, a 31 de diciembre de 1974

Concurro con la Opinión del Tribunal que expone elocuentemente que el criterio de dependencia es un requisito *sine qua non* para que prevalezca una reclamación contra el Fondo del Seguro del Estado.[1] La ley gira en una órbita distinta a las disposiciones de herencia establecidas en nuestro Código Civil Revisado y la ausencia de tal requisito derrota una solicitud de pensión o dietas, ya sea en proceso no culminado de desembolso por haber mediado una determinación previa, o pendiente de dictaminar.

La indebida tardanza del Fondo en la tramitación del caso, no puede servir de base para sostener una determinación favorable a los herederos no dependientes que reclaman en el caso de autos, pues la propia ley prevé las situaciones de demora injustificada por parte del Fondo, autorizando como remedio al obrero, patrono ". . . o cualquier parte interesada

---

[1] Un análisis sereno del lenguaje consignado en el Art. 3 de la ley (11 L.P.R.A. sec. 3), demuestra que en casos en que el obrero fallece por causa independiente del accidente del trabajo ". . . el Administrador . . . deberá, previa la prueba justificada al efecto, conceder y ordenar que se pague *el balance de cualquier compensación perteneciente o que se adeude* al obrero o empleado lesionado *al tiempo de su muerte,* a aquelos que *dependieran para su subsistencia* del obrero o empleado fallecido, en cuyos derechos quedan expresamente subrogados."

En los casos como el que nos ocupa, en que la muerte está relacionada con el accidente, ". . . sin que el obrero o empleado dejare pariente alguno que de él *dependiera para su subsistencia, el desembolso se limitará* al pago de los gastos del funeral y tales gastos no serán mayores de la suma de trescientos (300) dólares, en adición a aquellos otros gastos de asistencia. . . ."

. . . [a] recurrir en queja ante la Comisión Industrial para que decida el caso . . .", pudiendo ésta en instancia inicial asumir jurisdicción y resolverlo. Art. 7 de la Ley Núm. 45 de 18 de abril de 1935 (11 L.P.R.A. sec. 9); *Montaner, Admor.* v. *Comisión Industrial*, 54 D.P.R. 797 (1939).

La doctrina del caso *Quiñones* v. *South P.R. Sugar Co. of P.R.*, 48 D.P.R. 351 (1935), fue establecida mientras estuvo en vigor la Ley Núm. 85 del 14 de mayo de 1928—derogada por la número 45, según subsiguientemente enmendada—y su virtualidad se justificó mientras el legislador no delineó claramente el carácter de dependencia. Esta última ley, eliminó la referencia a *herederos* contenida en su Art. 6, bajo el título *Pagos en Forma de Pensiones* lo cual en unión a las restantes disposiciones vigentes, robustece la decisión emitida en el día de hoy.

—O—

Opinión disidente del Juez Asociado Señor Cadilla Ginorio, con la cual concurren el Juez Presidente Señor Trías Monge y los Jueces Asociados Señores Martín e Irizarry Yunqué.

San Juan, Puerto Rico, a 31 de diciembre de 1974

Propone la opinión circulada en el presente caso por el Juez Asociado Señor Díaz Cruz y de la cual disiento, que tanto los plazos devengados como los no devengados a la muerte del obrero han de considerarse como derechos personalísimos que se extinguen con su muerte. No creemos que deba revocarse en ese sentido el caso de *Quiñones* v. *South P.R. Sugar Co. of P.R.*, 48 D.P.R. 351 (1935). En dicho caso el obrero no tenía dependientes al momento de su muerte y sus herederos entablaron una reclamación para recobrar lo que el obrero, en vida, no llegó a recibir. Allí concluimos que:

"Como hemos dicho, la mayoría de las autoridades se manifiesta en el sentido de que el derecho a la compensación 'not yet

accrued' termina con la muerte del obrero lesionado. Sin embargo, aquella porción de la compensación 'already accrued' a la muerte del obrero constituye un derecho adquirido que puede ser reclamado por los herederos o los representantes de la herencia. Creemos, como la mayoría de los tribunales, que en Puerto Rico puede llegarse a esta conclusión. El propósito evidente de nuestra legislación es beneficiar en primer lugar al obrero que sufre las lesiones y en caso de muerte a las personas que de él dependen; pero esto no quiere decir que una vez adquirido un derecho por la persona directamente lesionada, este derecho, en un caso como el presente en que el obrero no dejó personas que dependieran de él, pueda ser reclamado por sus herederos, albacea o administrador de la herencia."

Entiendo que los plazos no devengados han de considerarse como un derecho personalísimo, pero no así los devengados por constituir un derecho adquirido, los cuales en el caso ante nos, tenía derecho la Sra. López Ramos a recibir en vida. Una de las conclusiones de hecho de la Comisión Industrial fue que, "[e]n este caso hubo una demora inexcusable por parte del Asegurador para rendir su decisión final en cuanto a la incapacidad que presentaba esta obrera."

Fue la negligencia del propio Fondo, la que evitó con su dilación, que la Sra. López Ramos en vida pudiera beneficiarse de aquello a lo que tenía derecho. Se dice en la Opinión que los beneficios que por incapacidad se reciben "van dirigidos a suplir, con fondos públicos, deficiencias en el presupuesto familiar del trabajador o de aquellos que de él dependían y no a enriquecer el acervo privado de quienes nada necesitaban del obrero extinto." Sin embargo, mientras el Fondo se tomó su tiempo en decidir, eran los herederos reclamantes quienes se hicieron cargo de su esposa y madre enferma, y quienes cubrieron sus necesidades.

Si bien es cierto que el derecho a una pensión alimenticia es uno personalísimo, los alimentos atrasados y no pagados, se convierten en una deuda.

"Realmente en los alimentos atrasados no concurre la razón que ha tenido en cuenta el legislador para prohibir la renuncia, *transmisión* o compensación de los futuros, la de ser éstos indispensables para atender con ellos a las necesidades ordinarias y precisas de la vida, las cuales tendrían que quedar en otro caso desatendidas. Pero satisfechas ya éstas en cuanto al pasado, las pensiones alimenticias correspondientes a dicho período de tiempo se convierten en una deuda como otra cualquiera del obligado a dar los alimentos, y, por lo tanto, puede ser susceptible de compensación, *transmisión* y renuncia." (Bastardillas nuestras.) Manresa, *Comentarios al Código Civil*, Tomo 1ro., pág. 847, ed. Séptima, año 1956.

Por lo tanto, concluyo que siendo correcto lo expuesto en el caso de *Quiñones* v. *South P.R. Sugar Co. of P.R.*, 48 D.P.R. 351 (1935), se debe confirmar la Resolución de la Comisión Industrial.