EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| | |
|---|---|
| In re:<br><br><br>Genaro Rodríguez Gerena | 2016 TSPR 47<br><br>194 DPR ____ |

Número del Caso: CP-2009-9


Fecha: 15 de marzo de 2016


Oficina de la Procuradora General:

      Lcda. Zaira Girón Anadón
      Subprocuradora General

      Lcda. Minnie H. Rodríguez López
      Procuradora General Auxiliar


Oficina de Inspección de Notarías:

      Lcda. Lourdes Quintana Llorens
      Directora


 Abogado del Querellado:

      Por derecho Propio

 Comisionada Especial:

      Hon. Jeannette Ramos Buonomo


Materia: Conducta Profesional – La suspensión será efectiva una vez advenga final y firme la Sentencia conforme a la Regla 45 del Reglamento del Tribunal Supremo.


Este documento constituye un documento oficial del Tribunal Supremo que está sujeto a los cambios y correcciones del proceso de compilación y publicación oficial de las decisiones del Tribunal. Su distribución electrónica se hace como un servicio público a la comunidad.

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

|  |  |  |
|---|---|---|
| *In re* <br><br> Genaro Rodríguez Gerena | CP-2009-0009 | |

*PER CURIAM*

San Juan, Puerto Rico, a 15 de marzo de 2016

I

El Lcdo. Genaro Rodríguez Gerena fue admitido al ejercicio de la abogacía el 29 de diciembre de 1976 y al de la notaría el 20 de enero de 1977.[1]

El 25 de mayo de 2004, la Sra. Alexandra García Ramírez (la quejosa) presentó una queja contra el licenciado Rodríguez Gerena y el Lcdo. Benito Gutiérrez Díaz, quien posteriormente falleció. En ésta, señaló que,

---

[1] Es menester señalar que el licenciado Rodríguez Gerena ha sido objeto de sanciones disciplinarias en el pasado. Véase *In re Rodríguez Gerena I*, 132 D.P.R 693 (1993) (en esa ocasión se le suspendió indefinidamente del ejercicio de la abogacía por violaciones a los artículos 15(e) y 26 de la *Ley notarial de Puerto Rico*, 4 L.P.R.A. secs. 2033(e) y 2044, y al canon 35 del Código de Ética Profesional, 4 L.P.R.A. Ap. IX C. 35. Posteriormente, sin embargo, en *In re Rodríguez Gerena II*, 132 D.P.R. 1031 (1993), en reconsideración, este Tribunal limitó la sanción a la separación permanente del ejercicio de la notaría.). Luego, una vez el licenciado Rodríguez Gerena fue reinstalado al ejercicio de la notaría, véase *In re Rodríguez Gerena*, 138 D.P.R. 138 (1995), este Tribunal, el 28 de octubre de 2015, mediante resolución, lo suspendió nuevamente de la notaría, por haber incumplido varios requerimientos que le fueron cursados por la Oficina de Inspección de Notarías. Además, actualmente penden contra éste las siguientes quejas: AB-2007-324; AB-2011-255; AB-2013-147 y AB-2014-133.

luego de comprarle una casa a su padre de crianza —el licenciado Gutiérrez Díaz-,[2] a instancias de éste, ella se personó a la oficina del licenciado Rodríguez Gerena, seis días después, para suscribir un documento que presuntamente protegería la vivienda en caso de que a su esposo, que se desempeñaba como policía, le sucediera algo. Así, alegó que, al pasar por la oficina del letrado, éste no permitió que leyera el referido documento y se negó a expedirle una copia del mismo. Posteriormente, según surge de la queja, el licenciado Gutiérrez Díaz requirió que la madre de la quejosa desalojara la casa que le había comprado a aquél y afirmo que dicha propiedad era suya.[3]

Así las cosas, la señora García Ramírez acudió nuevamente al despacho del licenciado Rodríguez Gerena, con tal de poder leer el documento que había suscrito luego de haber comprado la casa en cuestión. Al leer éste, se percató que en el mismo le estaba vendiendo la vivienda al licenciado Gutiérrez Díaz. Por tanto, en su queja, la señora García Ramírez indicó que firmó tal documento bajo engaño y sin que el licenciado Gutiérrez Díaz estuviese presente.

En lo pertinente, el licenciado Rodríguez Gerena negó las alegaciones de la quejosa. En cambio, señaló que ésta, en efecto, pudo leer el documento que suscribió y que,

---

[2] Esta escritura de compraventa fue autorizada por la Lcda. Jacqueline J. Martínez Romero.
[3] Valga destacar que, cuando ocurrieron estos hechos, la madre de la quejosa estaba tramitando su divorcio del licenciado Gutiérrez Díaz.

cuando le pidió copia del mismo, él accedió a dársela. Asimismo, señaló que el licenciado Gutiérrez Díaz estuvo presente y que incluso le entrego cierta cantidad de dinero a la señora García Ramírez.

En lo que respecta al licenciado Gutiérrez Díaz –contra quien también se presentó la queja-, éste, en su contestación, alegó esencialmente la validez y licitud del negocio jurídico celebrado con la señora García Ramírez. Además, señaló que ésta nunca ocupó la casa en concepto de dueña, puesto que nunca hubo tradición. Asimismo, el licenciado Gutiérrez Díaz afirmó que el negocio jurídico en cuestión se realizó en miras de lograr refinanciar hipotecariamente una propiedad suya a través de un tercero. Según se desprende de su contestación, luego de que se lograra el refinanciamiento, la quejosa y su esposo habrían de traspasarle la propiedad nuevamente, a través de un contrato de compraventa, y éste asumiría el pago de la deuda hipotecaria.

En consideración de lo anterior, este Tribunal, inicialmente, refirió el asunto a la Oficina de Inspección de Notarías (ODIN), para que ésta evaluara el asunto y emitiera un informe sobre el particular. El 28 de junio de 2005, la ODIN presentó el informe correspondiente, en el cual determinó que las partes, en cierta medida, estuvieron involucradas en la simulación de un negocio jurídico.[4] En lo

---

[4] Es preciso notar que la determinación de la ODIN estuvo fundamentada en una serie de documentos sometidos por las

pertinente, es imperativo señalar que el licenciado Rodríguez Gerena admitió, en su contestación a la queja, que estaba interviniendo en la simulación de un negocio jurídico. Indicó, pues, que la quejosa había acudido ante él con tal de venderle lo más rápido posible el inmueble al licenciado Gutiérrez Díaz, de quien había adquirido el mismo con el fin de obtener para éste un refinanciamiento de la propiedad. Es decir, el licenciado Rodríguez Gerena tenía conocimiento de que la compraventa que autorizó era, en realidad, un negocio jurídico simulado, conforme al acuerdo de refinanciamiento pactado entre el licenciado Gutiérrez Díaz y la señora García Ramírez.

Posteriormente, el asunto fue referido a la Oficina de la Procuradora General, quien procedió a radicar la querella correspondiente, imputándole al licenciado Rodríguez Gerena infracciones al artículo 2 de la *Ley notarial de Puerto Rico*, Ley Núm. 75 de 2 de julio de 1987, 4 L.P.R.A. sec. 2002, y al canon 35 del Código de Ética Profesional, 4 L.P.R.A. Ap. IX C. 35. Acaecidos los trámites de rigor, el 15 de enero de 2013, la Comisionada Especial, Lcda. Jeannette Ramos Buonomo, rindió su informe, en el cual determinó que, en efecto, el licenciado Rodríguez Gerena vulneró las normas éticas imputadas.

---

partes; entre éstos, las propias admisiones hechas por el licenciado Rodríguez Gerena en su contestación a la queja.

II

A

En su artículo 2, la *Ley notarial de Puerto Rico* consagra como principio cardinal del ejercicio de la notaría la fe pública notarial. Así, dispone que

> [e]l notario es el profesional del Derecho que ejerce una función pública, autorizado para dar fe y autenticidad conforme a las leyes de los negocios jurídicos y demás actos y hechos extrajudiciales que ante él se realicen, sin perjuicio de lo dispuesto en las leyes especiales. Es su función recibir e interpretar la voluntad de las partes, dándole forma legal, redactar las escrituras y documentos notariales a tal fin y conferirle[s] autoridad a los mismos. La fe pública al notario es plena respecto a los hechos que, en el ejercicio de su función personalmente ejecute o compruebe y también respecto a la forma, lugar, día y hora del otorgamiento. 4 L.P.R.A. sec. 2002.

Como se sabe, "[l]a fe pública notarial . . .es la espina dorsal de todo el esquema de autenticidad documental. Cuando se quiebra, todo el sistema se afecta". *In re González González*, 119 D.P.R. 496, 499 (1987).

Los notarios, pues, ejercen una labor fundamental para nuestro ordenamiento jurídico, puesto que son los custodios de la fe pública, a través de la cual se viabilizan un sinnúmero de negocios jurídicos y de transacciones de diversa índole. Véase *In re Aponte Berdecía*, 161 D.P.R. 94, 103 (2004). Por tanto, en el ejercicio de sus prerrogativas, los notarios están indefectiblemente "obligado[s] a cumplir con la ley y el reglamento notariales y los cánones de ética profesional". *In re Ayala*

*Oquendo*, 185 D.P.R. 572, 579 (2012). Véase, además, *P.A.C. v. E.L.A.*, 150 D.P.R. 359, 393 (2000).

En lo pertinente, un abogado viola la fe pública notarial cuando da fe de hechos falsos. *In re Aponte Berdecía*, 161 D.P.R. en la pág. 103. Ello, atenta contra las consideraciones axiológicas que informan en el ejercicio de la notaría en nuestra jurisdicción y, a su vez, supone conducta éticamente reprochable, sancionable bajo los cánones de ética profesional.

B

El canon 35 del Código de Ética Profesional le "impone a los abogados [y a los notarios] un deber de sinceridad y honradez frente a todos, no sólo en la tramitación de litigios, sino en *todo tipo de actos*". *In re Pons Fontana*, 182 D.P.R. 300, 306 (2011) (énfasis suplido); *In re Collazo Sánchez*, 159 D.P.R. 769, 773 (2003). Este deber se exige "en aras de preservar el honor y la dignidad de la profesión, ya que el compromiso del abogado con la verdad es *incondicional e ineludible*". *In re Martínez Almodovar*, 180 D.P.R. 805, 818-819 (2011); *In re Irizarry Vega*, 176 D.P.R. 241, 245 (2009). Ciñéndonos a los hechos del asunto ante nuestra consideración, es preciso destacar que el referido canon dispone diáfanamente que "[e]l abogado debe ajustarse a la sinceridad de los hechos al . . . redactar afidávit u otros documentos . . .". 4 L.P.R.A. Ap. IX C. 35. "En armonía con lo anterior, con su firma, un abogado no puede suscribir hechos incompatibles con la verdad". *In*

*re Martínez Odell I*, 148 D.P.R. 49, 54 (1999); *Alonso García v. Comisión Industrial*, 102 D.P.R. 752, 755 (1974).

C

Por último, es preciso destacar que la simulación de negocios jurídicos por parte de un notario, en cierta medida, supone conducta éticamente reprochable que, como mínimo, vulnera tanto el artículo 2 de la *Ley notarial de Puerto Rico*, como el canon 35 del Código de Ética Profesional. Es decir, mediante la simulación, sea esta absoluta o relativa,[5] el notario no sólo le falta a la verdad, sino que, además, mancilla la fe pública notarial en él depositada. Este Tribunal ha sido enfático al sancionar éticamente esta práctica. Así, ha expresado que

> [l]a participación de un abogado [en un negocio simulado] . . ., cobra mayor vigencia y validez cuando éste se desempeña como notario ya que en tal situación se está atentando contra la propia naturaleza de lo que la fe notarial y pública representa en una sociedad que ha depositado confianza en manos de dicho funcionario.
>
> Resolvemos que la validez de los actos y documentos públicos no puede dejarse al arbitrio de una norma ética débil, y que la participación de un abogado como tal o como notario en negocios simulados es conflictiva con los mejores postulados de conducta que deben regir a los miembros de nuestra profesión de abogado y en su consecuencia ello de ordinario constituye suficiente base para el desaforo. *In re Vélez*, 103 D.P.R. 590, 598-599 (1975).

---

[5] Para una discusión jurídica sobre la simulación de negocios jurídicos, véase, por ejemplo, *Delgado Rodríguez v. Rivera Siverio*, 173 D.P.R. 150, 160-164 (2008); *Romero v. S.L.G. Reyes*, 164 D.P.R. 721 (2005).

Por tanto, no hay duda que la intervención de un abogado o notario en cualquier negocio jurídico simulado es razón suficiente para sancionar a éstos disciplinariamente.

III

En este caso, es innegable que el licenciado Rodríguez Gerena incurrió en conducta éticamente reprochable, la cual contravino tanto el artículo 2 de la *Ley notarial*, como el canon 35 del Código de Ética Profesional.

Ante todo, tal y como se desprende de su contestación a la querella, el licenciado Rodríguez Gerena autorizó una presunta "compraventa" de un inmueble a sabiendas de que ésta no era más que un subterfugio para que una de las partes procurara un financiamiento a través de un tercero. Al actuar de esta forma, vulneró la fe pública notarial en él depositada y, a la vez, contravino el deber de sinceridad que establece el canon 35 del Código de Ética Profesional.

En vista de lo anterior, se suspende por el término de treinta (30) días al licenciado Rodríguez Gerena del ejercicio de la abogacía. Se le impone el deber de notificar a todos sus clientes de su inhabilidad para seguir representándolos, devolverles cualquier honorario recibido por trabajos no realizados e informar oportunamente de su suspensión a los distintos foros judiciales y administrativos del País. Además, deberá acreditar a este Tribunal el cumplimiento con lo anterior

dentro del término de treinta (30) días a partir de la notificación de esta opinión *Per Curiam* y sentencia.

Se dictará sentencia de conformidad.

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

*In re*

Genaro Rodríguez Gerena          CP-2009-0009

SENTENCIA

San Juan, Puerto Rico, a 15 de marzo de 2016

Por los fundamentos expuestos en la Opinión *Per Curiam* que antecede, se suspende por el término de treinta (30) días al licenciado Rodríguez Gerena del ejercicio de la abogacía. Se le impone el deber de notificar a todos sus clientes de su inhabilidad para seguir representándolos, devolverles cualquier honorario recibido por trabajos no realizados e informar oportunamente de su suspensión a los distintos foros judiciales y administrativos del País.

Además, deberá acreditar a este Tribunal el cumplimiento con lo anterior dentro del término de treinta (30) días a partir de la notificación de esta opinión *Per Curiam* y sentencia.

Lo acordó el Tribunal y certifica el Secretario del Tribunal Supremo. La Jueza Presidenta Oronoz Rodríguez inhibida. La Jueza Asociada señora Pabón Charneco no intervino.

Juan Ernesto Dávila Rivera
Secretario del Tribunal Supremo